IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| NOVELLA T. CLACK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-6174-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JOANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Kathryn Tassinari
Drew L. Johnson, P. C.
1700 Valley River Drive, First Floor
Eugene, Oregon  97401

   Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204-2904

Page 1 - OPINION AND ORDER

Michael McGaughran
Regional Chief Counsel
Richard A. Morris
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Novella Clack brings this action pursuant to section 405(g) of the Social Security

Act to obtain judicial review of a final decision of the Commissioner denying her application for

disability insurance benefits ("DIB").  I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for DIB on October 27, 1999.  The application was denied

initially, but rather than appeal the decision plaintiff filed two additional applications on October

27, 1999 and November 24, 2000, alleging disability as of October 9, 1999.  The agency found

that plaintiff was disabled as of November 2, 2000 on reconsideration.  After a timely request for

a hearing, plaintiff appeared before an Administrative Law Judge ("ALJ") and alleged disability

as of May 31, 1999.  On May 23, 2003, the ALJ issued a decision finding that plaintiff was not

disabled prior to November 2, 2000 within the meaning of the Act and therefore was not entitled

to benefits, but that her impairment equaled the Listing of Impairments as of November 2, 2000.

This decision became the final decision of the Commissioner when the Appeals Council declined

to review the decision of the ALJ on May 5, 2005.  Plaintiff requested judicial review.

Page 2 - OPINION AND ORDER

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits ("SSI") may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant.  Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI).  To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and

determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI).  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

Page 4 - OPINION AND ORDER

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## FACTS

I.    Clack's History

Plaintiff, 62 years old at the time of the hearing, alleges disability beginning May 31, 1999 due to insulin reactions, cataracts, hearing loss, high blood pressure, depression, diabetes, and hypoglycemia. Plaintiff graduated from high school. She has provided administrative support services to a business, has worked as a bookkeeper/secretary, a data entry operator and an office manager.

Since plaintiff is challenging only the ALJ's findings with regard to her insulin reactions, I will set forth here the medical evidence relevant to that condition.

Plaintiff was diagnosed with diabetes when she was 16.  During the relevant period, she received treatment from Roger Mallory, M.D., David Calder, M.D., Peter Newcomber, M.D., and Constance Hume-Rodman, M.D.  Dr. Mallory determined on June 1, 1999 that plaintiff's main difficulty was controlling her blood sugar.  He recommended she see Dr. Calder, an internist who specialized in diabetes management.

Dr. Calder saw plaintiff on June 3, 1999, and wrote, "Now her only awareness of a low blood sugar is often she will find herself getting up from the floor, or will find the paramedics, or sometimes find herself at the hospital.  She has had paramedics out to her home as often as once a week, on an average once a month over the last year."  Tr. 248.  During his visit with plaintiff on September 14, 1999, plaintiff reported a hypoglycemic event when she got up out of bed, fell and cut her head on the bedside.  Dr. Calder noted that plaintiff was not following his directions to eat cornstarch before bedtime and maintain a higher target for blood sugar levels at bedtime. When she asked about brain damage as a result of hypoglycemia, Dr. Calder reportedly told plaintiff "that it is just exactly what she is doing, that she understands the principal, that she can repeat the principal, but does not follow through with the action."  Tr. 244.

Dr. Newcomer evaluated plaintiff on July 6, 1999, noting that her diabetes was under good control since her appointment with Dr. Calder.  On August 24, 1999, he reiterated this finding, noting that her blood sugars were averaging 120 and she had not experienced any severe reactions.  On November 24, 1999, plaintiff reported she had experienced a hypoglycemic event, and had been "out for six hours on her carpet."  Dr. Newcomer urged plaintiff to keep her blood sugars in the 200s to avoid such events, and stated, "She is aware of this but she just really is not following instructions like she is supposed to be doing."  Tr. 357.  On February 28, 2000, Dr.

Newcomer opined that any memory problems plaintiff was experiencing were due to depression rather than hypoglycemia. Tr. 355. In March 2000, Dr. Newcomer evaluated plaintiff, noting that she had experienced only one episode of hypoglycemia and that otherwise she was "doing really well." Tr. 354.

Dr. Hume-Rodman evaluated plaintiff on May 22, 2000, noting plaintiff's report of two recent hypoglycemic events while plaintiff was driving. Plaintiff lost her driver's license as a result and was unable to drive to work. (Plaintiff was working five days a week, four hours a day.) On July 5, 2000, Dr. Hume-Rodman reported that plaintiff had not experienced any hypoglycemic events. Finally, on October 5, 2000, Dr. Hume-Rodman reported that plaintiff was doing "a remarkably good job" and had not experienced any hypoglycemic events recently.

II.    The ALJ's Decision

The ALJ found that plaintiff had physical impairments considered severe within the meaning of 20 C.F.R. § 404.1520(b). Specifically, he found that she suffered from insulin dependent diabetes and experienced loss of consciousness due to insulin reaction with hypoglycemic episodes.

The ALJ determined that plaintiff could perform light work between May 31, 1999 and November 2, 2000. As such, the ALJ found that plaintiff was limited to lifting and carrying more than 10 pounds frequently with an occasional 20 pound maximum. She was limited to occasional stair climbing, stooping, kneeling, crouching, and crawling. She could not climb ladders or work at heights. She could not hear speech in noisy settings, and had problems with eyesight in her right eye but could still drive.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that Clack could return to her past relevant work. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act during May 31, 1999 to November 2, 2000.

However, the ALJ concluded that plaintiff's impairment equaled the Listing of Impairments as of November 2, 2000 due to the increased number of hypoglycemic events plaintiff began experiencing at that time.

## DISCUSSION

I.    Credibility Determination

Clack contends that the ALJ improperly rejected her testimony. The Commissioner argues that the ALJ's credibility assessment is supported by substantial evidence, noting that her testimony was inconsistent with the objective medical evidence for her symptom testimony prior to November 2, 2000.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273,1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity

of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284. Clear and convincing reasons for discrediting a claimant's testimony include consideration of inconsistencies between testimony and conduct, daily activities, type and dosage of medication, failure to seek treatment or to follow prescribed treatment, and reports to physicians. 20 C.F.R. 404.1529; see also, Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

Plaintiff produced medical evidence of underlying impairments consistent with her complaints and there is no evidence that she is malingering. Therefore, the ALJ must provide clear and convincing reasons for rejecting Clack's testimony.

The ALJ noted a number of discrepancies in Clack's testimony. She testified that she could not call 911 during her insulin reactions, but she called for emergency services at least four times. She was working during the relevant period and stopped for reasons unrelated to her condition. She did not consistently follow her doctors' treatment regimen, but when she did her health improved dramatically. Finally, she reported to one of her doctors that she needed paramedics to come to her aid at least once a month and sometimes once a week when the record shows she had only two paramedic visits to her home and two emergency room visits.

Page 9 - OPINION AND ORDER

The ALJ properly considered Clack's testimony that when she has a reaction she "can't call the EMTs." Tr. 586. She testified that she had been able to call them once by randomly pushing buttons on the phone until the operator assisted her. The record reflects, however, that she was able to call 911 at least four times by herself.

The ALJ properly considered plaintiff's work history during the relevant period. She stopped her last substantial gainful activity in May of 1999 not because of her condition but because she lost a key employee. Yet she reported May 31, 1999 to be the date of onset of disability. This is a relevant factor in determining whether to accept plaintiff's complaints about the severity of her condition.

The ALJ also based his credibility finding on the fact that plaintiff did not always follow her doctors' directions, which was particularly surprising given how long plaintiff has been living with diabetes. It appears the ALJ relied on Dr. Newcomer's statement that plaintiff "just really is not following instructions like she is supposed to be doing." Tr. 357. Plaintiff points out that Dr. Calder implied plaintiff's inability to follow the necessary regimen was due to brain damage brought on by hypoglycemic events. However, Dr. Newcomer opined, after testing plaintiff, that any memory loss was due to depression as opposed to hypoglycemic events. The ALJ specifically noted that Dr. Newcomer determined that plaintiff could likely handle relatively detailed tasks. Furthermore, when plaintiff complained about her memory loss to Dr. Newcomer, she said that she had been forgetting people's names and appointments, and whether she had talked with people. She did not report any problems in remembering her doctor's directions with regard to her medical care. While it is true plaintiff kept very good records of her blood sugar levels, implying any lapse on her part in following directions was not purposeful, the ALJ could

balance out the above evidence and properly find that plaintiff's failure to follow the prescribed treatment reflected poorly on her credibility.

At the end of his analysis of the credibility of plaintiff and her lay witness, the ALJ stated that there were no physicians' opinions supporting disability during the relevant period. Plaintiff points out that such an opinion is not necessary to find disability. While this is true, the ALJ made the statement in the context of accepting plaintiff's symptom testimony only to the extent it was supported by medical evidence.

Finally, I note plaintiff does not challenge the other reasons provided by the ALJ for finding plaintiff not entirely credible. For example, plaintiff testified that she lost her driver's license due to hypoglycemic events, but the ALJ noted she lost her license only for brief periods of time. In addition, she reported that she experienced hypoglycemic events at a rate higher than evidenced by the record. During the relevant period, she experienced months when she had her diabetes well under control, and was not needing to call the EMTs "once a week." These inconsistencies between plaintiff's statements and the medical evidence constitute clear and convincing reasons for finding plaintiff's symptom testimony not entirely credible. The ALJ's credibility findings and interpretation of the record are supported by substantial evidence with regard to plaintiff's testimony about her impairments and her inability to work.

II.    Residual Functional Capacity

Plaintiff argues that the ALJ's residual functional capacity did not account for her frequent hypoglycemic events between May 31, 1999 and November 2, 2000.

The only records of plaintiff's hypoglycemic events during the majority of the relevant period are those she reported to her doctor, and any calls made to the paramedics. While her lay

Page 11 - OPINION AND ORDER

witness testified that plaintiff had reactions at least three or four times a month in 1999, he also testified that he had left the area between March of 1999 and February of 2000. Tr. 607. Accordingly, his testimony was not particularly useful.

According to the medical records and paramedic reports, plaintiff reported two "mild" reactions in June of 1999. She did not report any other events until September of 1999, when she experienced a severe reaction and hit her head on the bedside. She reported two events to Dr. Newcomer in October of 1999. In November of 1999, she reported falling onto her carpet during an event. She was free of any hypoglycemic events until March of 2000, when the paramedics were called to her home, and when she was pulled over by the police for swerving in her car. Finally, she experienced two events in April of 2000, when the paramedics were called to her home and when she was involved in a small motor vehicle accident. In total, plaintiff experienced 10 reported episodes in the 17 month relevant period. This is less than the once a month episode required to equal the listing under 11.02. This is also less than the two episodes a month about which the VE opined would not be tolerated by an employer. Tr. 614-15.

Furthermore, I note that from May to November 2, 2000, plaintiff did not report any hypoglycemic events to her doctors, and the paramedics were not called. Plaintiff's lay witness acknowledged that plaintiff had "started that new medicine and she was doing pretty good for a while." Tr. 608.

The evidence supports the ALJ's conclusion that plaintiff's hypoglycemic events did not increase in frequency to the point that they should have been included in plaintiff's residual functional capacity, until November 2, 2000.

Page 12 - OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is affirmed.  Judgment will be entered.

IT IS SO ORDERED.

Dated this ____8th_____ day of May, 2006.


                                    _____/s/ Garr M. King_____
                                    Garr M. King
                                    United States District Judge